**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHARLES R. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| vs. | ) | No. 09-3170-CV-S-JCE-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for

disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 <u>et seq.</u>, and supplemental

security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 <u>et seq.</u>  Pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary.

For the following reasons, the Secretary's decision will be remanded under sentence four for

further proceedings consistent with this opinion.

<u>Standard of Review</u>

Judicial review of a disability determination is limited to whether there is substantial

evidence in the record as a whole to support the Secretary's decision.  42 U.S.C. § 405(g); <u>e.g.,</u>

<u>Rappoport v. Sullivan,</u> 942 F.2d 1320, 1322 (8th Cir. 1991).  Substantial evidence is "'such

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Richardson</u>

<u>v. Perales,</u> 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. V. NLRB,</u> 305 U.S. 197,

229 (1938)).  Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814

(8th Cir. 1994).

Discussion

Plaintiff was 39 years old at the time of the hearing before the ALJ. He alleges disability beginning February 28, 2006, due to cerebral palsy. He has past relevant work as a construction worker, laborer, and in maintenance and roofing.

At the hearing before the ALJ, plaintiff testified that his reading and writing is limited, and he had to have his mother read the letters from the Social Security Agency. He does have a high school diploma. He sees his primary physician, Gloria Kirk, about once a month, to get pain medication. He stated that he takes Lortab, and a lot of other medications. It was plaintiff's testimony that he alleged a disability date of February 28, 2006, because he couldn't keep his balance on a roof any more and could no longer work as a roofer. He tried working for one day for AAA roofing, but was not able to perform the job because his muscles do not rebound like a regular person, who can work and then rest, and then resume working. He testified that his ability to work is physically limited by his muscles and his recovery time. His prior work experience, in addition to residential roofing, includes maintenance and as a laborer, both of which required heavy lifting. He testified that he could presently lift 10 to 15 pounds, about three or four times in an eight-hour day. He can walk about two or three blocks, stand 20 minutes, and sit for about an hour. He is limited in how much he can bend, stoop and squat. Plaintiff also testified that he has trouble with his hands in gripping. He has numbness and tingling in his arms and legs, and tends to drop things. He stated that he has daily pain, which is not affected by activity, and which he would rate at a four-to-five on a ten-point scale. Plaintiff testified that he has to get up several times in the night to use the bathroom; the problem was

3

become worse, and he has been told that this is because of the cerebral palsy and the fact that the muscles around his bladder are deteriorating. He is able to help his mother around the house, with light housework, such as washing dishes, doing laundry, and other household chores, but he does not do the grocery shopping. He described his typical day as helping with light housework and then taking a break. He has to rest six or seven times, for thirty to forty-five minutes at a time. He helps some in the yard with a self-propelled mower. He does not use a computer, and has no hobbies, although he did like to fish. He cannot any longer because of pain. Plaintiff testified that he has problems with his muscles and fatigue, and also has problems with his knees and his back. Since he quit working in 2006, he has noticed a significant difference in his stamina and strength. He does not have side effects from medication. In addition to gripping and numbness, he has difficulty with his hands with fine motor skills, such as picking things up. After he tries to do things, his hands cramp up.

According to the testimony of a vocational expert, when presented with the RFC by the ALJ, which was that plaintiff could perform medium work, with an additional limitation that allowed for occasional reaching, handling and feeling, and only occasional climbing and avoiding exposure to hazards such as machinery and heights, plaintiff would be able to perform jobs that exist in the national economy, such as an usher and a counter clerk. These are light, unskilled positions. When presented with other hypotheticals, including a restriction of lifting 10-15 pounds, and standing only 20 minutes at a time, with a rest period every two hours, there would be no jobs the individual could perform because of the weight limitation and the standing restriction. The vocational expert also testified that a break more frequently than every two hours would eliminate all jobs. He stated that if there was a sit/stand option requirement where the

individual could stand and walk up to four hours in an 8-hour day, but could stand no more than 20 minutes continuously, there would be no jobs available.

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, February 28, 2006. He further found that the medical evidence established that plaintiff suffers from cerebral palsy, but that the effect of his borderline intellectual functioning is *de minimis*, and that he does not have an impairment or combination of impairments that meets or equals a listed impairment. Regarding the cerebral palsy, the ALJ found that the requirements of the listing for cerebral palsy are not satisfied because plaintiff "has no significant spasticity, full range of motion, normal gait, and no sensory or motor deficits." [Tr. 10]. It was the ALJ's finding that plaintiff was only partially credible. The ALJ found that plaintiff could not perform his past relevant work, but that he had the Residual Functional Capacity ["RFC] to perform medium work, with the limitation that he could only occasionally climb, should avoid exposure to hazards such as machinery and heights, and can only occasionally use his hands to reach, handle, and feel. Therefore, it was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because he erred in finding that plaintiff's borderline intellectual functioning was not a severe impairment; erred in his credibility determination; and erred in failing to properly assess plaintiff's RFC.

Turning to the issue of plaintiff's borderline intellectual functioning, it is plaintiff's position that a consultative examiner found him to be in the borderline range of intelligence in 2006. He contends that the ALJ erred in finding this to be an *de minimis* impairment because of jobs and tasks he could perform, and erred in not having the vocational expert even consider

borderline intelligence functioning. It is his position that case law from the Eighth Circuit

indicates that this is a severe impairment, and that it must be presented to the vocational expert.

A review of the record indicates that the ALJ found that borderline intelligence

functioning was not a severe impairment because plaintiff had performed skilled work as a

roofer and a garage door installer, and because he testified that he could add, subtract, and

manage a checkbook. The ALJ concluded that plaintiff had the RFC as delineated above. [Tr. at

10, ¶ 5]. In one of the hypotheticals posed to the ALJ, he referred to limitation of "simple tasks

and instructions only." [Tr. 46]. According to the law in this circuit, however, a diagnosis of

borderline intellectual functioning should be considered severe, provided that the diagnosis is

supported by significant medical evidence. Nicola v. Astrue, 480 F.3d 885, 887 (8th Cir. 2007).

Gragg v. Astrue, 615 F.3d 932, 939 (8th Cir. 2010). Further, if the ALJ errs by finding a severe

impairment is not severe, the disability determination must be reversed and remanded. Nicola,

480 F.3d at 887.

The government submits that in this case, the borderline intellectual functioning had no

more than a minimal impact on plaintiff's ability to carry out basic work activities, and the ALJ

was correct in pointing out that plaintiff had mastered skilled work in the past. Additionally, it is

contended that even if the argument had merit, reversal is not required because there was no

effect in the outcome. Because the ALJ advanced beyond step two based on the severe

impairment of cerebral palsy, he continued his analysis through step five, and had the vocational

expert consider a limitation to "simple tasks and instructions only." [Tr. 45-46]. It is submitted

that the Eighth Circuit has held that describing a claimant as capable of doing simple work in a

hypothetical to a vocational expert adequately accounts for a finding of borderline intellectual

functioning, relying on <u>Howard v. Massanari</u>, 255 F.3d 577, 582 (8th Cir. 2001).

This Court must agree that the issue in <u>Howard</u> was "not whether the individual's diagnosis of borderline intellectual functioning was a severe impairment; rather, [it was] whether the hypothetical question posed to a VE adequately addressed the limitations associated with the diagnosis of borderline intellectual functioning." <u>Nicola</u>, 480 F.3d at 887. Under Eighth Circuit law, this diagnosis should be considered severe when supported by sufficient medical evidence.

The evidence in this case is that plaintiff was diagnosed by Dr. Frances Anderson, Psy.D., with a borderline range of intelligence because of a full scale IQ of 79. The doctor stated that this placed plaintiff in the "7th percentile rank when compared to age-related peers." [Tr. 154]. The doctor also concluded that the estimate of borderline intellectual functions was an accurate estimate. Further, he noted that, regarding his test results, plaintiff had relative deficits in "social judgment, common sense and knowledge of conventional standards of behavior." [<u>Id.</u>]. Additionally, he noted deficits in "his speed and accuracy in a visual motor perception task of associative nonverbal learning, as he seemed to struggle a little [sic] motor skills of writing." [<u>Id.</u>]. The doctor concluded that plaintiff could understand at least simple instructions, could sustain concentration, persistence and pace for simple tasks, and that although his ability to socially interact appeared adequate, "he would likely do better with limited public contact, as has been the case with his past employments." [Id.]. Additionally, the record indicates that although plaintiff earned a high school diploma, he did so with the benefit of special education classes. Further, in a Physical Residual Functional Capacity Assessment prepared by Dr. Wantuck and a Psychiatric Review by Dr. Bowles,it was noted that plaintiff's "limitations appear to be dominantly in the area of intellectual functioning," based on problems with reading,

understanding, coherency, concentration, and answering. [Tr. 158, 174]. Dr. Griesemer noted that plaintiff had "unusual affect. He might also benefit from a psychological/cognitive evaluation as well." [Tr. 188].

In this case, the ALJ ignored the diagnosis and did not account for any cognitive disorder in the RFC, beyond a reference at one point to a limitation simple tasks and instructions. The ALJ concluded that plaintiff's borderline intellectual functioning was not a severe impairment. Based on the foregoing, plaintiff's diagnosis should be considered severe, as it is supported by sufficient medical evidence. The Court finds, therefore, that the ALJ erred in not considering borderline intellectual functioning a severe impairment.

This Court has carefully reviewed the record, and finds that remand is required in this case. The law is clear in the Eighth Circuit that if the ALJ errs in finding that a severe impairment is not severe, the disability determination must be reversed and remanded. Nicola, 480 F.3d at 887 (8th Cir. 2007). The ALJ erred in not considering plaintiff's borderline intellectual functioning as a severe impairment when he found that, although he could not perform his past relevant work, there was other work in the economy that he could perform. As a result, the record is inadequately developed regarding the extent that this impairment affects plaintiff's ability to perform substantial, available work. Accordingly, the case should be reversed and remanded for further proceedings consistent with this opinion.

It is therefore

ORDERED, ADJUDGED AND DECREED that, pursuant to sentence four of 42 U.S.C. § 405(g), this matter be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ James C. England
                                                     JAMES C. ENGLAND
                                                    United States Magistrate Judge

Date:    1/31/11